IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

*D Jay,*

| | |
|---|---|
| DOUGLAS E. ROOKS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CIVIL ACTION |
| | ) **CV206- 72** |
| ALTAMAHA TECHNICAL COLLEGE, | ) FILE NO. _____ |
| | ) |
| Defendant | ) |

## COMPLAINT FOR DAMAGES - JURY DEMAND

Comes now Plaintiff in the above action and files this his Complaint for Damages against

Defendant, as follows:

1.    Plaintiff was employed by Defendant, Altamaha Technical College (hereafter

"ATC"), beginning July 2, 2001, as a part-time Commercial Truck Driving Instructor.  Since

March 4, 2002, Plaintiff has been and is currently employed by Defendant as a full-time

Commercial Truck Driving Instructor.  Plaintiff brings this action for violation of rights

conferred on him by the United States Constitution and for which he may have redress under

Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, the Americans with

Disabilities Act, 42 U.S.C. § 12101,  42 U.S.C. § 1983, 42 U.S.C. § 1988, 42 U.S.C. § 1981a, 42

U.S.C. § 1985, and the First, Fifth and Fourteenth Amendments to the United States

Constitution.  This action is based on discriminatory personnel actions and practices based on

Defendant's policies, customs and actions, including discrimination against Plaintiff on the basis

of his race, on the basis of a work-induced disability, and in retaliation for Plaintiff opposing

1

unlawful employment practices when he made a written complaint to Defendant containing

allegations of racial discrimination against and disparate treatment toward students, pay disparity

based on racial discrimination, and refusal to allow Plaintiff to take prescribed medications for

his work-induced disability for which he was on FMLA leave, which written complaint included

supporting statements of facts. Supplemental jurisdiction of the Court is invoked to hear claims

under the Georgia Constitution and Georgia law.

JURISDICTION AND VENUE

2.      Plaintiff brings his action pursuant to the Civil Rights Act of 1964, Title VII, 42

U.S.C. § 2000e, the Americans with Disabilities Act, 42 U.S.C. § 12101,  42 U.S.C. § 1983, 42

U.S.C. § 1988, 42 U.S.C. § 1981a, 42 U.S.C. § 1985, the First, Fifth and Fourteenth

Amendments to the United States Constitution, the Georgia Constitution, and 28 U.S.C. §§ 2201

and 2202.  The Court has supplemental jurisdiction of Georgia law claims under 28 U.S.C. §

1367, which state claims arise under the Georgia Constitution and Georgia law.

3.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1337 and 1343, and

the statutory and constitutional provisions set out above.

4.      Venue is proper in this Court under 28 U.S.C. § 1391 in that all parties to this

action reside in this District and the causes of action arose therein.

ADMINISTRATIVE PROCEDURE

5.      Within 180 days of Defendant's last act of discrimination against Plaintiff,

Plaintiff initiated a charge in writing under oath against Defendant with the Equal Employment

Opportunity Commission ("EEOC"), pursuant to 42 U.S.C. § 2000e-5(e).  Exhibit "A" hereto.

2

6.     Plaintiff's charge remained pending until he received notice from the EEOC of his right to bring this action.  Exhibit "B."

7.     Plaintiff files this his Complaint for Damages within ninety days of his receipt of right to sue.  Exhibit "B."

PARTIES

8.     Plaintiff is a black male, a natural citizen and a resident of the State of Georgia. Plaintiff has been employed by ATC since July 2, 2001, and has been a full-time employee since March 4, 2002.

9.     Defendant Altamaha Technical College is a person within the meaning of 28 U.S.C. § 1343.

FACTS

10.     Plaintiff was first employed by ATC as a part-time Commercial Truck Driving Instructor on July 2, 2001, and has been employed by ATC as a full-time Commercial Truck Driving Instructor since March 4, 2002.

11.     Prior to July 2005, Plaintiff's supervisor, Brenda Madan, requested that Plaintiff teach "pre-trip" classes for Appling Motors during his time off from employment by ATC, which Plaintiff taught because of said supervisor's request.  Brenda Madan later told Plaintiff that Defendant's vice-president was upset because the class was not taught through ATC's Department of Continuing Education.

12.     On July 27, 2005, Plaintiff's supervisor, Brenda Madan told Plaintiff he could make extra money if he would teach "pre-trip" in Jesup.  Plaintiff told his supervisor he did not

3

have time for the extra work because when he was not teaching Defensive Driving at ATC he was teaching Defensive Driving at his wife's training center in Baxley, Georgia.

13.     On July 28, 2005, Plaintiff began a Family Medical Leave Act ("FMLA") leave, with ATC's approval, due to a work-related condition and job-related stress which aggravated and exacerbated Plaintiff's general medical condition.

14.     On September 8, 2005, while Plaintiff was on FMLA leave, he submitted to ATC a written complaint containing allegations of racial discrimination against and disparate treatment toward students and instructors, pay disparity between black and white employees of employees, and refusal to allow Plaintiff to take prescribed medications for his medical condition for which he was on FMLA leave, which written complaint included supporting statements of facts. Exhibit "C."

15.     After ATC received Plaintiff's written complaint, and on November 3, 2005, effective November 8, 2005, Plaintiff's physician released Plaintiff to return to work, with the provision that he not be subjected to harassment in his workplace.  ATC refused to allow Plaintiff to return to work.  Exhibit "D."

16.     On November 3, 2005, after ATC received Plaintiff's written complaint, and after ATC received Plaintiff's release of Plaintiff to work, ATC's Human Resources Manager told Plaintiff he had to be evaluated by ATC's physician and complete a physical exam by the Georgia Department of Transportation ("DOT") before returning to work.

17.     Subsequently, and on November 16, 2005, after ATC received Plaintiff's written complaint, and after ATC received Plaintiff's release of Plaintiff to work, Plaintiff's physician

again advised ATC that he had released Plaintiff to work effective November 8, 2005, with "the only limitation being that [Plaintiff] be provided a workplace with no harassment." Exhibit "E."

18.     Plaintiff successfully completed the DOT exam and was released to return to work by ATC's physician. ATC did not allow Plaintiff to return to work and instead scheduled a meeting with ATC's agents and officials and Plaintiff for December 14, 2005.

19.     After ATC received Plaintiff's written complaint, and on December 14, 2005, ATC's President told Plaintiff that as a result of his written complaint, ATC was suspending Plaintiff from his employment without pay, and made said suspension effective retroactively to November 28, 2006, which suspension was stated to Plaintiff to be for thirty days. Exhibit "F."

20.     After ATC received Plaintiff's written complaint, and after December 14, 2005, ATC informed Plaintiff his suspension without pay was actually from November 28, 2005, through January 6, 2006. Exhibit "G."

21.     Plaintiff had been denied renewal of his employment contract with ATC in a timely manner during the time of his FMLA leave, submitting his written complaint and his suspension without pay by ATC.

22.     After ATC received Plaintiff's written complaint and after ATC suspended Plaintiff without pay, retroactively, Plaintiff was presented with a new employment contract with ATC, which contract contained conditions not in his previous contracts, requiring that Plaintiff submit enter into a "non-compete" agreement, agree to random drug testing, and preventing Plaintiff from taking medications prescribed by his physician. Exhibit "H."

23.     Plaintiff was required to sign said contract, with addendums, to continue his employment with ATC.

24.    By not informing Plaintiff that his suspension without pay was effective on November 28, 2005, until December 14, 2005, ATC denied Plaintiff of appeal rights as set out in ATC's policies and procedures.

25.    Plaintiff timely filed his EEOC Charge of Discrimination on December 29, 2005. Exhibit "A."

26.    After ATC received notice that Plaintiff had filed an EEOC Charge, ATC suspended Plaintiff's supervisor, Brenda Madan, for having someone else take her state ethics test, the specific terms of which such suspension Plaintiff is unaware but which Plaintiff believes to be lesser than the terms of his suspension.

27.    Prior to Plaintiff filing his EEOC Charge, Plaintiff had been the only person subjected to discipline as a result of Plaintiff's written complaint of September 8, 2005.

28.    After Plaintiff's written complaint, and after Plaintiff's suspension without pay, and after Plaintiff's supervisor's suspension after Plaintiff filed his EEOC charge, all personnel within Plaintiff's department were required to retake ethics training, under supervision.

29.    ATC has taken no other action concerning Plaintiff's written complaint of September 8, 2005, other than as shown herein.

30.    ATC provided Plaintiff with a general Governor's executive order establishing a Code of Ethics for Executive Branch officers, alleging that such code apprised Plaintiff of a conflict of interest concerning Plaintiff teaching Defensive Driving at his wife's school.  Exhibit "I."

31.    ATC has never provided Plaintiff with any rule which prohibited his teaching such course before Plaintiff taught such course at his wife's school.

6

32.     After Plaintiff taught two courses at his wife's school, ATC told Plaintiff his actions were a conflict of interest.

33.     After ATC informed Plaintiff teaching at his wife's school was a conflict of interest, Plaintiff has not taught any courses at his wife's school.

34.     Subsequent to Plaintiff submitting his written complaint on September 8, 2005, and subsequent to Plaintiff filing his EEOC Charge of Discrimination, ATC has continued to retaliate and discriminate against Plaintiff, by initiating disciplinary actions concerning incidents for which similarly-situated employees who have not made such complaints or charges have not been disciplined.

35.     Also subsequent to Plaintiff's complaint of September 8, 2005, and his EEOC Charge of Discrimination, Plaintiff has suffered adverse employment actions in addition to such actions set out above, including but not limited to loss of status by taking away Plaintiff's work keys on the first day when he was allowed to return to work after his suspension, by not allowing Plaintiff access to his students' data base, and by reassigning Plaintiff to certain trucks and equipment not in keeping with his status and seniority with ATC.

36.     On the first day Plaintiff was allowed to return to work after his suspension without pay, he was required to report for a drug test based on "reasonable suspicion," which test was returned with negative results.

37.     Subsequent to his return to work from his suspension without pay, Plaintiff has been reprimanded for supposedly allowing a truck, which had a broken fuel gauge, to run out of fuel, while not subjecting similarly-situated co-workers to the same or similar disciplinary actions.

7

38.     Subsequent to his return to work from his suspension without pay, Plaintiff spoke to his supervisor about Plaintiff's concern about records showing road miles driven by students, and was told in response that "once a dog bites you he always will," while not giving Plaintiff an answer or direction about the students' records.

39.     Subsequent to his return to work from his suspension without pay, and during the course of Department of Labor hearings and transactions concerning Plaintiff's application for unemployment benefits, ATC has submitted false and misleading information to the Department of Labor, without notice to Plaintiff or his counsel, and has as a result succeeded in having an "Employment Marketing Representative" reverse an Administrative Hearing Officer's decision to grant Plaintiff unemployment benefits.  Exhibit "J."

40.     Subsequent to his return to work from his suspension without pay, Plaintiff has been approached by agents and officials of ATC with information and job advertisements for positions which such agents and officials gave to Plaintiff as being "good opportunities" for Plaintiff for employment.

41.     Subsequent to his return to work from his suspension without pay, Plaintiff has been subjected to humiliation by his supervisor, who had been suspended for not taking her own ethics training, during a conference with others present, including but not limited to being told in vulgar and offensive language that he should turn in his resignation and that the supervisor wanted things back "the way they were."

42.     Plaintiff receives lesser pay than similarly-situated white instructors and instructors who have not made written complaints or who have work-related disabilities.

8

43.     Plaintiff's co-workers who have not made written complaints concerning ATC's employment practices have not been disciplined or suspended or been required to enter into employment contracts with conditions or had their status and position reduced, all of which Defendant has done in retaliation against Plaintiff for his written complaint of September 8, 2005.

44.     Plaintiff lost wages, retirement benefits, leave benefits, medical, deferred compensation and other benefits, all a result of his suspension without pay, Defendant's refusal to allow him to return to work when released by his physician, all because of Defendant's discrimination based on Plaintiff's race, his work-related disability, and in retaliation for submitting a written complaint concerning Defendant's employment practice, in violation of constitutional rights, laws and statutes set out herein.

### CAUSES OF ACTION

45.     Defendant discriminated against Plaintiff in retaliation because for making a written complaint concerning Defendant's employment practices, as set out herein.

46.     Defendant discriminated against Plaintiff because through its agents' actions, including but not limited to Defendant's refusal to allow Plaintiff to return to work, his suspension without pay, which was made retroactive and which therefore deprived Plaintiff of the ability to avail himself of administrative remedies because the time for same had expired before Defendant informed Plaintiff of the date of such suspension.

47.     Defendant's actions were and are unlawful, deliberate, oppressive, offensive and outrageous, with reckless indifference to Plaintiff's federally- and state-protected rights, and were

designed to intentionally inflict emotional distress on Plaintiff, for which Plaintiff is entitled to recover damages from Defendant.

48.     Defendant's unlawful actions deprived Plaintiff of wages and other benefits due him, for which he is entitled to compensation and to recover damages from Defendant.

49.     Defendant's unlawful actions were committed unlawfully, deliberately and intentionally, with specific intent to deprive Plaintiff of rights guaranteed him by the Constitution and laws of the United States and by the Constitution and laws of the State of Georgia, for which Plaintiff is entitled to recover general, compensatory and punitive damages against Defendant.

50.     Defendant's unlawful actions entitle Plaintiff to equitable relief as is appropriate to effectuate the purposes of the constitution and laws set out herein, including judgments compelling reinstatement to his former status and with his previous employment contract, reinstatement of all lost benefits, judgments enforcing Defendant's liability for back pay, wages and benefits under the Civil Rights Act and Title VII, and further entitle Plaintiff to equitable relief restraining and enjoining Defendant from acts of discrimination and retaliation against Plaintiff.

WHEREFORE, Plaintiff prays:

(a)     That the Court empanel a jury to hear his cause;

(b)     That he be awarded back pay, reinstatement to his former status and former employment contract, compensation for all past, present and future lost benefits, including but not limited to leave and retirement benefits, medical benefits lost and increased cost of medical treatments, and other benefits due him, all as allowed by law and in amounts as will be shown at trial;

10

(c)      That he be awarded damages for intentional infliction of emotional distress, future pecuniary losses, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, as allowed by law and in amounts as will be shown at trial;

(d)      That he be awarded general and compensatory damages against Defendant in amounts allowed by law and as will be proven at trial;

(e)      That he be awarded punitive damages against Defendant in amounts as will be proven at trial;

(f)      That he be granted equitable relief as is appropriate to effectuate the purposes of the Civil Rights Act and Title VII, and constitutional provisions, statutes and laws set out herein, including judgments compelling his reinstatement to his former position and status of employment, including reinstatement of his former contract, reinstatement of all lost benefits, and judgments enforcing Defendant's liability for lost pay, wages and benefits under the Civil Rights Act and Title VII, and the Americans with Disabilities Act;

(g)      That he be granted affirmative equitable relief restraining and enjoining Defendant from acts of discrimination and retaliation against him;

(h)      That he be awarded his costs of litigation, including expenses and attorney's fees; and

(h)      That he be awarded such other and further equitable relief as the facts require.

                                                Martha F. Dekle, P.C.

                        By:    _____

                                                MARTHA F. DEKLE - 216740
                                                Attorney for Plaintiff

1606 Union Street
Post Office Box 1644
Brunswick, Georgia  31521
(912) 261-8980

                                        11

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 115-2006-00093 |
| | and EEOC |

State or local Agency, if any

| Name (Indicate Mr, Ms, Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Mr. Douglas E. Rooks | (912) 366-0285 | 07-18-1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 410 Simpson Drive, Baxley, GA 31513 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALTAMAHA TECHNICAL COLLEGE | 101 - 200 | (912) 427-5803 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1777 West Cherry Street, Jesup, GA 31545 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 06-01-2002   Latest: 12-29-2005
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  I was employed by the above named Respondent on July 2, 2001, as a part-time contracted Instructor. I currently hold a full-time Instructor position. To the best of my knowledge, and up to the present, I have been paid lower wages than my similarly situated White co-workers. On July 28, 2005, I requested and was granted a medical leave of absence due to my disability. I was released to return to work with limitations, by my attending physician effective November 8, 2005. On September 8, 2005, I wrote a complaint and shared it with Janet Carter, Human Resources Manager. I complained about, what I believe to be, wrongful practices within the Institution, to include: disparate treatment towards students because of their race, Black; intimidation; pay disparity, etc. I was not allowed to return to work as released by my attending physician on November 8, 2005. On December 14, 2005, I was placed on thirty (30) days suspension without pay effective from November 28, 2005 through January 6, 2006.

II.  On or about June 2004, Brenda Madan, Lead Instructor, told me that Elaine Tuten, V.P. of Operations told me my salary would not change. On November 3, 2005, Janet Carter, Human Resources Manager told me that I would not be able to return to work as released by my attending physician until I was medically evaluated by my employer's designated physician. Also, that I was to complete a physical exam administered by the Department of Transportation (DOT). On December 14, 2005, Doctor Paul Scott, President, told me that as a result of their investigation regarding my complaint,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Dec 29, 2005 _____ _Douglas E. Rooks_ Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED
DEC 2 9 2005
EEOC-SLO

*EXHIBIT "A"*

EEOC Form 5 (N/91)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 115-2006-00093 |
| | | and EEOC |

State or local Agency, if any

THE PARTICULARS ARE *(Continued from previous page)*:

I was suspended without pay for thirty days. I will be subject to random drug tests. I will not be allowed to take my required medication to deal with my disability. My employer gave me no reason for failing to allow me to return to work, although I have been released by all the attending physicians.

III.   I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and in retaliation for complaining of what I believe are discriminatory practices. I also believe that I have been discriminated against because of my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

RECEIVED

DEC 2 9 2005

EEOC-SLO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Dec 29, 2005 _____<br>Date    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Douglas E. Rooks**<br>**410 Simpson Drive**<br>**Baxley, GA 31513** | From: **Savannah Local Office**<br>**410 Mall Blvd**<br>**Suite G**<br>**Savannah, GA 31406** |

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **115-2006-00093** | **Diego Torres,**<br>**Investigator** | **(912) 652-4448** |

*(See also the additional information enclosed with this form*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issu
under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VI
the ADA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice** or your right to sue based on this cha
will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC
be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed
until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below**
applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN
90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge,
you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought
in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for**
**any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosure(s)

*John W. Fitzgerald,*
**John W. Fitzgerald,**
**Deputy Director**

*December 29, 2005*
*(Date Mailed)*

cc: **Janet Carter**
**Human Resources Manager**
**ALTAMAHA TECHNICAL COLLEGE**
**1777 West Cherry Street**
**Jesup, GA 31545**

*EXHIBIT "B"*

7/2/01 pt---3/4/02 ft

My partime employment began 7/2/01-- Fulltime began 3/4/02
Altamaha Technical College
Main campus 1777 West Cherry St. Jesup, GA 31545 (912-427-5803)

Baxley Campus 1334 Golden Isles West (912-367-1700)

Retaliation: (27 July 2005) Asked by lead instructor (Brenda Madan) if I wanted to make extra money in my spare time, I asked doing what, she replied, teaching pretrip to some people in jesup.
 I replied that I will have all that I can do because, when I'm not teaching ddc classes on my off days for Altamaha tech, I will be helping my wife teach ddc classes at her training center. Upon hearing this she told me that you know they're going to fire you, or better yet they just won't give you another contract. (We had been working without a contract since the end of June.)
 I was previously asked by Brenda to do this for a company in my spare time (Appling Motors), which I did, about a week later Brenda informed me that Elaine Tuten (VP) was upset because this did not go through Continuing Education. I asked what the big deal was, Brenda replied, didn't I tell you Elaine was prejudice. Which she occasionally reminded me of when I have a question about why there was a problem with something I did.

Intimidation: While on Doctor Leave, Brenda Madan came by my house to pick up my radio because they were being upgraded.
She asked how I was doing, I told her I was under a lot of stress, told her I had loss about 20 pounds in the last 45 days, showed her my clothes fit. And it seemed like she tried to exacerbate the situation.
 She told me: Rick told me to tell you to resign and not let them tie you up in the logistic mess because you can get a job with the DMV(S) or somewhere else.
If you look for another job tell them not to call the School but to call me personally for a reference.
This put us in a real bind you being out, we've all been working around the clock.
She asked what kind of medications was I on; I told her I didn't know the name.
Said she gave the Doctors excuse to Elaine/Monica, when you're out more than 3 days they have to re-instate you.
She said they (Altamaha Tech) would have a cow if they knew she came by my house. Staying for about half hour, I walked outside as she was leaving.
As I returned inside I thought I was going to have a heart attack as my heart was pounding like a base drum. My wife tried to console me as my emotions got the best of me. About a week passed Brenda Called and asked my wife if she could deliver my keys to the school to an instructor on the backing pad because she forgot to leave keys. My wife took the keys to the school.

I believe I made a gross mistake by putting notes of the corrupt things that were going on in my dept. and putting them on my computer. I have my own logon screen and

RECEIVED
DEC 2 9 2005
EEOC-SLO

EXHIBIT "C"

password. I thought I was protected. But to my surprise one of my co-workers (Fallon Weyant) showed me that he could get into anybody's e-mail. I stood and watched and he opened up e-mail after e-mail without a password. One in particular was a VP @ Hazlehurst Campus. (Hank Hobbs.) I marveled at how good he was. I stood and watched. This particular lady was in trouble about attendance or had to go before a council or something like that. I don't know if he was trying to tell me that he had seen my notes or what. In my mind I believe he went into the screen and shared the contents with others, as we do at Brenda's Computer. Fallon has really helped to with the computer especially with excel which I use at the church.

One e-mail in particular that stands out is the one from Hank Hobbs to Brenda, where Hank Hobbs informed Brenda that he had heard that Rick Morey (instructor) didn't want to teach DDC classes anymore. He doesn't have a choice in the matter, oh yeah he does have a choice but one that he wouldn't want to make. The same goes for Doug and Fallon when Fallon becomes Full Time. We have invested time and money for him to teach and for him to say I don't want to teach anymore. Ronnie told me after Rick read that e-mail he left and went home. I couldn't restrain myself I had to press print.

I never changed my password from month to month so it was common knowledge what it was. Which Brenda allows us to access her password for e-mail among the instructors for the main Trucking Folder to respond to some of her mail or inform her of what it is when she is not on campus.

Racial Discrimination: Prior to going to Training for the National Safety Council, Brenda asked me if I wanted to go to the training, I said yes I'll go. She then told me if you know like I know you wouldn't go. She wanted to insure that a part-time employee (Fallon Weyant) that she favored would be able to go without complication because I turned the training down. But because I elected to go, she lobbied to send him as well. To my knowledge, no other part-time employee has been afforded such a privilege.

After the training was completed, We met to assign instructors with classes, Fallon was assigned nine classes as I was assigned five classes, another instructor (Rickie Morey) was assigned three classes as he indicated he was not interested in teaching in his off days as he is also a CDL examiner as well.

To my knowledge no other part-time employee was allowed to draw unemployment benefits when they were laid off. On one layoff occasion (about a year ago) Brenda went above and beyond to insure that Fallon received benefits as she signed the forms in his behalf obtained from The Department of Labor. He informed me that DOL said that if he was hired on as full time and his hours were cut back he could draw benefits, as he got Brenda to fill out the paperwork indicating such. With the degree of secrecy, and how this was handled at this level it was obvious this was done outside of the correct protocol. On another just recent layoff occasion, I sat in Brenda's Office as she and Fallon tried to recollect how they were able to obtain benefits the first time, Brenda called Janet Carter in Jesup to check, as it sounded like a negative, but said she would be in Jesup the next day and would talk to her. The outcome on this attempt I cannot say whether or not he obtained benefits.

When I was hired part-time, as a condition of employment Brenda reiterated on several occasions I could not seek or was not entitled to unemployment benefits. Special provisions were made to accommodate Fallon because they told him he could have only

one part time contract, but they would have to pay him overtime to teach DDC classes which is not fair to me, because I am full time and I cannot get 21 plus dollars an hour on a part time contract as we are not allowed overtime as Full time employees.

Offensive Language: Supervisor occasionally refer to a racially motivated offensive remarks made of a former black male student as he was renamed with the acronym DAN. As it is no secret to another employee (Ronnie Carter) as well.
On one occasion Brenda let the word (Nigger) slip, as she was referring to a Black student, but realized I too was black, and tried to justify with a cover by saying the way he is acting is what makes him one. I said nothing.

Many Black students have been discriminated against in the way of testing, classes, dismissals, and in my opinion because of the color of their skin. I can name at least ten that meet this criteria. One student that will forever standout in my mind (black female) that help aid other students to pass, she failed because she was asked if she was done with her pretrip. Her reply was that she was done with the outside; the examiner (Ronnie Carter) failed her because she said she was done. He told us he asked her if she was through and she said yes. To me this was a very dark day for atc. I didn't have much training with her, but this student was predestined to fail, as we were told such (Fallon/I). Even if this was the case, many students have failed and were given second and third chances to make it. As I have retrained many of them to pass. I have occasionally heard Ronnie say that atc have no jurisdiction over their testing, they are governed by DMVS. But this is one occasion I wanted to speak up for the students rights, but I could not because I knew I had to stay in my shell of employment. Even with this who's going to believe me? Many times when I'm at a function and I hear Dr. Scott talk about how we stack up as a Technical college in the Community etc, I can only wonder, if he only knew.

 It would almost take a sting operation to interview everybody one on one to get to the truth. I can assure you if anybody see this, the corroboration Will begin. I guess I'm breaking the code of silence. I have a been very loyal hush mouth with a lot of things, but how loyal should one? I have not blowed the whistle because I believed in the keeping the integrity of atc in tact. But at what price must my loyalty pay? But you know the problem I have who's gonna believe me.  I have to hold so much inside, but I'm afraid to say anything because I believe something could happen to me.
How Did I get in the middle of this? I wonder am I rational thinking is it me or what.

Brenda has asked me to write several rebuttals of complaints that students have made that have come to Dr. Scott/Surveys. And some of it has weight to it, but I am directed to put a spin on it to discredit the student in every way possible. I was just doing my job, so I thought. I really got satisfaction from a write up when I showed her the finished product. As she made very small changes if any.

The biggest blunder in my opinion is When Brenda told (Fallon & I) to complete the on-line ethics survey for herself and two other instructors, which he did, as I made an excuse that I had something else to do. I thought this would be one of the most sacred documents

in atc, so this is some kind of leadership. But who's going to believe me? I guess I can say this since I've said so much. One of our instructors can barely read & right, let alone do an ethics survey. I 'm sure if we all took the survey again we would probably answer something a little differently. But I can assure you it would be a serious struggle if it would be given to him again. Brenda has hand feed Ronnie with almost everything, just give him a simple spelling test/math problem. Right down to preparing him for CDL Examiner School. He is sheltered from giving any classroom curriculum instruction, as he is not capable.

I am usually the go to guy when it comes to working evening/nights. As it started out I didn't mind, but we thought (my wife and I) that the load should be shared with the other instructors, and I mentioned it to Brenda, the reply was that I live right here in Baxley. And my nights/evening continued. As of late I continue to work nights/evening but other instructors work this schedule as well. I guess this is a problem corrected so no problem. I try not to make  too big of a fuss about the scheduling because I sometime come in unknowingly to Staff mostly on Monday and Tuesday and work with a problem student that I think may be on the failure list, mostly which are black because I vowed not to let Race be a factor again, as some blacks do need more time but so does a lot of others that don't get the same opportunity. Every now and then I will come in and work with a white student that may be having a problem because Brenda found out that I was coming in my off time, and I didn't want her to think I was only helping only black students, but she never made any bones about it. One Monday she called me at home (radio) and asked me who was I at the School with yesterday? I think she only assumed it was me, but I left the back gate open. I came out to help a black student, that I was kinda testing my theory that I knew they were going to fail him because he could barely read and write. He knew it too, because he said Ronnie was talking to like in a hostile way. I talked to Brenda about his disability, but she said just give him an across the board passing score on his classroom work. Most of his hands on task me did pretty good.

I guess I am jumping from place to place trying to let you see what I have to go through. I have gotten very forgetful and misplaced, at work and at home. Many times as I am leaving work, my co-workers ask me to lock the back gate on the way out, I forget. I just simply forget. The next morning they ask me did you catch the back gate. I reply man I just forgot. Lately when I'm asked to catch the back gate, they wait see me leaving and just go and lock it. A couple of times I have been called on the radio, and just told five seconds prior to lock up and when I turn the ignition key, it's over.
I have been asked a couple of times by my supervisor about the gate, and I try to downplay that I just simply forgot.

Pay: Compensation discrimination in regard to race exists as I perform the exact job function as my white counterparts for which my skills come from school training and over the road experience, (training required to perform the job) as another is not. Effort and responsibility are in some cases equal or surpassed. I previously asked for an increase in my part-time contract compensation, because everyone was getting an accelerated rate over and above for their part-time contract compensation as I am the only black employee

in the department. The reply was that is all that Elaine would give me. I was reminded of her preference of race.

I shared some of this with a family member who has a PhD in education, I told her I planned to talk to with someone in Human Resources on Thursday, She said that I should go straight to the EECO and file a complaint of racial discrimination under title seven. And ask for a letter of right to sue. Because she thought that I needed some immediate relief. I have been thinking about what she said but I have never done anything like that and it almost scares me, if it has come to this because I guess I have seen too many mafia type movies, too much information. I guess TV has kind of ruined me, I feel like I need to make a backup copy of the disc in case something happens to this one. She thought that a lawyer may advise me to go public if I felt threatened. But I don't like a spotlight to be put on me that way. She told me to pray about it, but it seems like all my prayers in the past have been relatively easy, but it's very hard to concentrate. I sometimes get a little relief from scriptures that we read at night or in Sunday School, and I tell myself that I'm going to beat this, and I may do ok for a day. It seem like I want somebody @ atc to hear me out, but its kinda like you run to the masa with your information he tell he's gonna take care of it, and not to worry about it just go on home. And the next thing you know a rope is being thrown around a tree with your neck the target. TV again.  How can I ever live again? I can kinda identify with a woman that has been raped, you're stripped of your self being but who can you turn to. My medical information is probably all over the school. A church member told me he asked about me at a DDC class he attended and the first thing the instructor told him is that I was out with an ulcer problem.

 My Doctor think that I should take more time off to allow the medicines to work, but I need instant relief. My sick time and money is running out, I know you guys can't see me for free, so I'm just in a mess.I didn't want anyone @ work to know that I was seeing a psychiatrist, But When I had to fill out FMLA papers my family doctor put it on the paperwork. Seems like the Medicines are keeping my rapid heartbeats down, and I guess this is what is making me write so much, but on the other hand I'm still a wreck. I still have trouble going to sleep, and sometimes I don't want to go to sleep because I want to put all my thoughts on paper and I just fight sleep and stay up all night. I hope this will pass.  My BP gets extremely high sometimes and I have to take a clolidine to bring it down. I'm afraid something is going to happen to me at anytime. I try to stay shut up inside but my wife insists that I get out and about. When I stay inside I'm a wreck. But in my mind I don't want atc to see me out and about too much. My weight loss has stabilized at is now hanging around 158-160. For some reason I get on the scales every night to check my weight loss. I try to eat but most of the time my mouth is so dry I can't. I'm not hungry most of the time. I feel like I look good on the outside but a mess on the inside. I thought I had a pulled muscle or something in the back of my neck on the left side. I can massage it out sometimes and it will go away, but sometimes it comes right back. And other times it comes back a day or so later. I don't know if it is stress or not. Dr. Streat prescribed me pain medicine but that's no help for this ailment. I can't afford all the co-pays and medicines that's being prescribed, having to go to and from Doctor visits. I appreciate the sample medicines but it don't seem like it doesn't do me any good.

I wish I had made some different choices along the way, but if I would just continue to say nothing about nothing and stay as humble as I could and just hear nothing see nothing. I really believe I wrote something down in the wrong places about that caused me so much stress.

Around the middle of last month I called on three occasions to try to talk to Dr. Scott The first time I called a lady by the name of Lesley answered the phone and said he was on the phone and did I want to wait, I left my number for him to call me back. About an hour passed he didn't call, I called back a second time Denise King answered the phone Said he had stepped out. She wanted to know if she it was something she could help me with. I said no just tell him Doug Rooks called, left my number again, I still have not received a return call to this day.

On Tuesday of this week(Sept 5th) I called and spoke with Janet Carter of Human Resources and asked for my hire dates and she gave them to me. I also asked it was possible to see my personnel file, she said that would be no problem, but it's unusual that she go around and make copies of the file. She asked about my expected return and about surgery, I told her about my scheduled return date but pending the doctor. I primarily was checking on the FMLA paperwork that I took for Elaine to get to Janet as she was going on vacation. I informed her that was a lot of stuff going on and that the doctor I was seeing a psychiatrist. And I am scheduled to see her on Thursday on my way to or from the Dr. visit. She informed me that I discussed with her she may be dutiful bown beyond confidentiality to divulge to Dr. Scott. This is what really frightens me because there is so much stuff that could leave me where?

There is so much more I want to say but maybe I can continue. It would feel so good if I knew somebody could go and investigate point by point of the things I said in this paper, so it wont be covered up. It seems like it would be easy investigating some of it and proves it without question, but I don't think a company is going to investigate itself and tell me their finding.

I guess my point is that I have been proven uncredible when Elaine Tuten reprimanded me for something another person said I said to discredit atc. I went to the City Managers Office (Jeff Baxley) on my off day with my 5yr old son to locate the Facility where I thought I would possibly be teaching DDC classes. We talked for about 10 minutes about the facility and he gave me schedules that was e-mailed to him, and he thought the city and county training should be combined. About a week later on June 2nd Rickie Morey called me and told me to come back to the School ASAP because Elaine Wanted to see me.(I asked Rick for a couple hours off because June 2nd was my sons birthday.) I rushed back and upon arrival to the school I asked what was going on, Rick told me that Elaine said I made some comments discrediting the School. I could only refer back to what Brenda told me about how Elaine does not like Black people. Brenda stopped by while on medical leave and she had to accompany me to a conference room as she was with her secretary, I presumed she was a witness or note taker. She started by telling me how she had been trained in Atlanta to markets such classes and that I represented atc in a very unprofessional manner, taking my little boy with me, and that I made a remark about an older Gentleman (Rick) didn't want to teach classes, my job was to instruct and instruct is

what I am paid to do. She several times emphasized how disappointed she was in me and she wanted to know why did I do it? I tried to explain what was said coming from the City Managers office that I said was not said by me, but by the City Manager. I don't know if he called back to the school to say that I came by, and what we discussed, or if it was exaggerated to put a blemish on my record. Brenda spoke only a few words, indicating that we need to get together with Hank Hobbs for scheduling. Elaine never one time questioned his motive if he in fact did say these things, in her mind whatever the case my word had absolutely no credibility. I just had to swallow that bitter lump and try to move on, but this was one of the hardest times I have ever had to deal with. From that point I seemed to spiral downward in a way I can't even explain. I wanted to see my personnel file so they wouldn't go back and add something that would discredit me any farther that I may possibly be.

One thing I can say for sure I am a very good Commercial Truck Driving Instructor and I hate to think that my gifts and graces cannot be shared with other people. Because so many people need hope in the job market. I have trained hundreds of men and women desiring career paths in the trucking industry, and I have been instrumental in helping them to succeed. This is truly my calling in life. But how can I save face and go back to the stress. I know this is too big for me to handle, and I don't think any relief is in sight.

It is time for me to get ready for my appt. with you, got to close. Thanks for allowing me to write down my thoughts.

*My Doctor Release*

## RETURN TO WORK OR SCHOOL

**ANDREW J. HURAYT, M.D.**
1421 Lee Street
Brunswick, GA 31520

Telephone: (912) 261-0510

Date __11/3/05__

This is to certify that

_Douglas Rock &_

has been under my care for the following:

_Anxiety & Depression_

and is able to return to (work) ~~school~~ on __Nov 8, 2005__ _fulltime unir limitations_

Remarks: _No Harcooment_

_____ (SIGNATURE)

11/3/07   Medical Arts Press   1 800 XW 2176

_EXHIBIT "D"_

*This Doctor Release*

**PINELAND MENTAL HEALTH / MENTAL RETARDATION / SUBSTANCE ABUSE SERVICES**
**PROGRESS NOTES**

| DATE | Dir. | Units | Indir. | NOTES |
|------|------|-------|--------|-------|
| 1/26/05 | cons | | | Axis II V71.09 |
| | | | | Axis III HTN, Ulcers |
| | | | | Axis IV work |
| | | | | Axis V GAF 78 |
| | | | | |
| 11-29-05 | 2007 | 2 | | MD Note |
| | | | | Needs fitness for duty to teach |
| | | | | truck driving. Was on sick leave + |
| | | | | cleared for his job of 4 years in Mar |
| | | | | WD WNB alert Coherent relevant |
| | | | | no AV Halluc No SHI/deas |
| | | | | Good mood. Enjoys job. |
| | | | | Well oriented Tolerates Rx well — |
| | | | | no side effect. |
| | | | | adjustment Disw c depr + anx |
| | | | | Continue Rx |
| | | | | RTC prn |
| | | | | No reason to not return to work |
| | | | | M D Simpson MD |

NAME _____   MHID# _____

# ANDREW J. HURAYT, M.D., P.C.

ild, Adolescent & Adult Psychiatry            1421 Lee Street
egrative Psychopharmacology                  P.O. Box 918
periential Psychotherapy            Brunswick, GA 31521-0918
dictive Diseases                              (912) 261-0510
                                      Fax: 261-0593

November 16, 2005

Re: Douglas Rooks, DOB 7/18/1961

Dear Employer:

This is to restate my note of November 3rd, 2005, releasing Mr.
Rooks to return to work fulltime on Tuesday, November 8th, 2005,
with the only limitation being that he be provided a workplace with no
harassment.

Mr. Rooks called today and indicated that he has not been allowed
back to work and said that he had to get a physical, which he did, and
another mental health evaluation. He should not need another
mental health evaluation, but if it is mandatory, it should have been
performed in a timely manner so that Mr. Rooks would be allowed to
return to his position.

Please advise in writing of any other concerns you may have. Please
also look into his short-term disability insurance benefits. If he is not
being allowed back to work, you need to advise his insurance carrier
as to why and extend his benefits accordingly.

Sincerely,

Andrew J. Hurayt, M.D.

EXHIBIT "E"

Meeting with Doug Rooks
December 14, 2005
3:00 p.m.

Staff of Altamaha Technical College to be present:

Dr. C. Paul Scott
Monica S. O'Quinn
Elaine Tuten
Janet Carter

Agenda:

Dr. Scott

Welcome everyone to the meeting.

State the purpose of the meeting – Discuss a personnel action involving Mr. Doug Rooks

History

On July 27, 2005, Brenda Madan reported to Elaine Tuten that Doug Rooks was helping his wife teach Defensive Driving Classes at her training center on his days off from work at Altamaha Technical College.

On that same day Doug Rooks left work due to illness. Doug has not returned to duty as of today.

Today we are going to discuss this and other items which have occurred since Doug has been absent from work.

Altamaha Technical College offers Defensive Driving Classes through our extension services (Continuing Education and Business and Industry Services). Doug Rooks is an employee of Altamaha Technical College. Doug Rooks teaching Defensive Driving Classes for a private business is a Conflict of Interest. The action of Doug Rooks may also be a violation of the Code of Ethics. An employee is never to use information coming to that employee confidentially in the performance of government duties as a means of making private profit.

During Mr. Rooks' absence he submitted a lengthy narrative to Janet Carter of various items concerning students and instructors of the Altamaha Technical College Commercial Truck Driving Program. As a result of this document an investigation was conducted. Any disciplinary action of any employees of Altamaha Technical College that are a result of the investigation will be confidential. As a result of the investigation Mr. Rooks is in violation of the Code of Ethics on two points. Point One is that employees of Altamaha Technical College are to put loyalty to the highest moral principles and to country above loyalty to persons, party, or government department. Point Two is that employees of Altamaha Technical College are to expose corruption whenever discovered.

D-28/4C

*EXHIBIT "F"*

As a result we have determined that the appropriate disciplinary action is that Mr. Rooks is to have 30 days of leave without pay. The time period will be from November 28, 2005 through January 6, 2006. Mr. Rooks may return to duty on January 9, 2006.

Elaine.

The employment contract of Doug Rooks has been prepared along with an addendum to the contract. The addendum to the contract reads as follows: Elaine is to read the addendum. Doug you will need to sign both copies of your employment contract and the addendum.

Dr. Scott will conclude the meeting.

**ⓘ You replied on 1/26/2006 1:34 PM.**

## Rooks, Doug

| | | | |
|---|---|---|---|
| **From:** | Carter, Janet | **Sent:** | Tue 1/24/2006 2:32 PM |
| **To:** | Rooks, Doug | | |
| **Cc:** | | | |
| **Subject:** | Benefits | | |
| **Attachments:** | | | |

Doug,
I spoke to our flexible benefits personnel and they have adviced me that for your flexible benefit selections if we do not send in your payments for last months premiums, then you will be subject to late entrant penalty for dental and will need to complete medical underwriting on any product that requires medical underwriting. If the items in the previous sentence are not completed then coverage will be terminated.

State Health will allow you to not pay your premium for one month which would result in you not having coverage for the month of January 2006.

I do have a change in your pay status for January 2006. The original suspension was for 30 days so when we determined the return date after 30 working days your return date was January 9, 2006. After review the suspension should have been for 30 calendar days. Therefore we will not be docking your pay for the first week in January or the last three days in November.

Please let me know how you would like for me to handle your premiums based on the above information. I need for you to send an e-mail to me by 4:00pm today. In the e-mail I need for you to state if the health insurance premium from December 2005 should or should not be deducted from your January 2006 pay. Also, I need for you to state if the flexible benefits deductions for December 2005 should or should not be deducted from your January 2006 pay.

These deductions must be entered today. Therefore, please make sure that you respond to this e-mail by 4:00pm today. Please feel free to call me if you have any questions.

*Janet Carter*
*Human Resources Specialist*
*Altamaha Technical College*
*ph: 912-427-5876*
*Fax: 912-588-2505*

C\·1

EXHIBIT "G"

# Altamaha Technical College

C. Paul Scott, PHD
President

1777 West Cherry Street • Jesup, Georgia 31545 • Phone: (912) 427-5803

Addendum to Employment Contract
Of Doug Rooks

I, Doug Rooks, in addition to agreeing to the conditions of my employment contract with Altamaha Technical College also agree to the following as conditions of my employment:

1. I agree not to directly or indirectly compete with Altamaha Technical College. The term "not compete" as used herein shall mean that the Employee shall not own, manage, operate, consult or be employed in a business substantially similar to or competitive with, the present business of Altamaha Technical College or such other business activity in which Altamaha Technical College may substantially engage during the term of employment.

   The Employee acknowledges that Altamaha Technical College shall or may in reliance of this agreement provide Employee access to customers and other confidential data and good will. Employee agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party.

2. I will not use any medications that will impair my performance or ability to carry out my duties and responsibilities of my job as Commercial Truck Driving Instructor. This includes, but is not limited to taking any medications, such as sleeping aids and/or muscle relaxers, which will cause drowsiness.

3. I agree that I will be subject to random drug testing upon my return to duty and continuing through June 30, 2006.

I, Doug Rooks, understand that a violation of any of these conditions of employment will result in disciplinary action, up to and including, termination of employment from Altamaha Technical College.

*Douglas E. Rooks*
Doug E. Rooks

*DEC 14th 2005*
Date of Signature

*C. Paul Scott*
Dr. C. Paul Scott

*Dec 14 2005*
Date of Signature

RECEIVED
DEC 2 9 2005
EEOC-SLO

EXHIBIT "A"

Altamaha Technical College is accredited by the Accrediting Commission of the Council on Occupational Education



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

# THE STATE OF GEORGIA

## EXECUTIVE ORDER

### BY THE GOVERNOR:

#### ESTABLISHING A CODE OF ETHICS FOR EXECUTIVE BRANCH OFFICERS AND EMPLOYEES

**WHEREAS:** in order to maintain the public trust, it is essential that the government function in a manner consistent with the highest ethical standards; and

**WHEREAS:** in carrying out their official duties and obligations, all officers and employees of state government must work solely for the public good, striving vigilantly to avoid even the appearance that their actions are motivated by private or personal interest; and

**WHEREAS:** it is in the best interests of the State of Georgia that consistent policies on ethics be applied to all executive officers and employees; and

**WHEREAS:** State employees should use their powers and resources to further the public interest and not for any financial or other personal benefit, other than salaried compensation and employer-provided benefits;

**WHEREAS:** State employees must safeguard their ability to make objective, fair, and impartial decisions and therefore should not accept benefits of any sort under circumstances in which it could be inferred by a reasonable observer that the benefit was intended to influence a pending or future decision or to reward a past decision; and

**WHEREAS:** State employees must avoid any conduct, whether in the context of business, financial, or social relationships, which might undermine the public trust, whether that conduct is unethical or lends itself to the appearance of ethical impropriety:

> **NOW, THEREFORE, BY THE POWER VESTED IN ME AS GOVERNOR OF THE STATE OF GEORGIA, IT IS HEREBY**
>
> **ORDERED:** That the Executive Order establishing an Ethics in Government Policy of January 20, 1999 is hereby RESCINDED and the following ethics policies are hereby adopted:

1

Dpt3

EXHIBIT "I"

03/28/06  83:19:20   VIDALIA CAREER CENTE->                    RightFax                    Page 805

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

**Section 1.** Persons Subject to this Executive Order.

a. The following persons are subject to this Executive Order:

   i. All employees in the Governor's Office and the Office of the Governor.

   ii. The heads of all State agencies who are appointed by the Governor.

   iii. Any other employees of Executive Branch officials, departments, boards, bureaus, agencies, commissions, councils, authorities, corporations, entities or instrumentalities of any kind, and others as may be designated by the Governor, to the extent that such designation does not conflict with Georgia law.

b. As used in this Order the term:

   (i) "Agency" means any Executive Branch department, board, bureau, agency, commission, council, authority, corporation, entity, or instrumentality of any kind, and others as may be designated by the Governor, to the extent that such designation does not conflict with Georgia law.

   (ii) "Agency head" means the executive head of an agency.

   (iii) "Charitable organization" shall have the meaning defined in O.C.G.A. Section 45-20-51.

   (iv) "Employee" shall mean any employee in the Office of the Governor, including the Governor, and any employee of any agency as defined herein.

   (v) "Family member" means a spouse, parent, grandparent, child, brother, sister, uncle, aunt, nephew, niece, first cousin, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepparent, stepchild, stepbrother, stepsister, half brother, or half sister.

   (vi) "Gift" means anything of value exceeding $25, including, but not limited to, food, lodging, transportation, personal services, gratuities, subscriptions, memberships, trips, loans, extensions of credit, forgiveness of debts, or advances or deposits of money.

   (vii) "Lobbyist" shall have the meaning defined in O.C.G.A. Section 21-5-70(6).

   (viii) "Officer" means the Governor and the heads of all State agencies who are appointed by the Governor. For purposes of this Order, all "officers" are also "employees" as that term is defined herein.

2

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

(ix) "Person" means an individual, partnership, committee, association, corporation, labor organization, or any other organization or group of individuals.

(x) "Value" means the actual retail price or cost attributable to a gift, less applicable taxes and gratuities or a reasonable estimate based upon customary charges for like goods or services in the locality. A series of tickets to sporting, entertainment, or similar events shall be valued as one gift. Entrance fees, admission fees, or other tickets shall be valued at the face value of the ticket or fee, excluding any portion attributable to a charitable contribution, if provided by a charitable organization.

**Section 2. Ethics Officer**

a. Each agency, as well as the Office of the Governor, shall designate an Ethics Officer. The Ethics Officer shall take appropriate measures to ensure that the agency's employees become familiar with applicable ethics laws and policies, including the policies set forth in this Order.

b. The Executive Counsel is hereby designated the Ethics Officer of the Office of the Governor.

**Section 3. Conflicts of Interest**

1. An employee of the Executive Branch of the State shall make every effort to avoid even the appearance of a conflict of interest. An appearance of conflict exists when a reasonable person would conclude from the circumstances that the employee's ability to protect the public interest, or perform public duties, is compromised by personal interests. An appearance of conflict could exist even in the absence of a true conflict of interest.

2. An employee of the Executive Branch of the State shall recuse himself or herself from any proceeding in which the employee's impartiality might reasonably be questioned due to the employee's personal or financial relationship with a participant in the proceeding. A "participant" includes, but is not limited to, an owner, shareholder, partner, employee, or agent of a business entity involved in the proceeding. If the employee is uncertain whether the relationship justifies recusal, then the employee shall disclose the relationship to the person presiding over the proceeding. The presiding officer shall determine the extent to which, if any, the employee will be permitted to participate. If the affected employee is the person presiding, then the vice chair or such other substitute presiding officer shall make the determination.

**Section 4. Gifts**

1. Except as provided in paragraph ii below, no employee, nor any person on his or her behalf, shall accept, directly or indirectly, any gift from any person with whom the employee interacts on official state business, including, without limitation, lobbyists and

3

state vendors. If a gift has been accepted, it must be either returned to the donor or transferred to a charitable organization.

II. Where appropriate for purposes of tradition, ceremony, or inter-governmental relations, or when acting as a representative of the Office of the Governor or an agency, an employee may accept a gift on behalf of an agency or the Office of the Governor. If the gift retains value after its acceptance, the employee must: (a) maintain custody of the gift no longer than reasonably necessary to arrange for the transfer of custody of the gift to the agency or Office of the Governor, or to a charitable organization on behalf of such agency or Office of the Governor; (b) file a report with the designated Ethics Officer no later than 30 days after receipt of the gift containing a description of the gift, the approximate monetary value thereof, the name and address of the person making the gift, the date the gift was made, and the disposition of the gift.

Section 5. Honoraria

No employee may accept any honoraria whatsoever.

Section 6. Expenses

An employee on whose behalf actual and reasonable expenses for food, beverages, travel, lodging, and registration are paid to permit the employee's participation in a meeting related to official or professional duties of the employee shall file a report no later than the 30 days after such expenses are paid. The report shall be filed with the designated Ethics Officer. The report must contain a description of each expense, the monetary value thereof, the name and address of the person paying such expense, and the purpose, date, and location of the meeting. Notwithstanding this provision, the preferred practice is for agencies and not third parties to pay such expenses.

Section 7. Nepotism

An employee shall not advocate for or cause the advancement, appointment, employment, promotion, or transfer of a family member to an office or position with an agency or with the Office of the Governor.

Section 8. Lobbying

a. The use of lobbyists will not be required or preferred as a way to obtain access to employees. Employees will strongly encourage any lobbyist wishing to meet with the Governor or his staff regarding his or her client and/or principal to bring a principal of his or her client to such meeting.

b. Former employees should not use their former positions for financial or other personal gain or to influence legislation or procurement decisions. Employees shall decline to communicate on official government matters with any lobbyist who was an officer within the preceding one-year period.

4

c.  No agency shall be permitted to contract with any person to provide lobbying, as that term is defined in O.C.G.A. § 21-5-70(5), services on behalf of that agency.

d.  Employees who promote or oppose the passage of any legislation by the General Assembly, or any committee thereof, shall coordinate all such activities with the Office of the Governor.

## Section 9.  Judicial Appointments

The following persons shall not be eligible for appointment by the Governor to fill a vacancy on the Supreme Court, the Court of Appeals, the superior courts, or the state courts:  (a) any person who has made a contribution to, or expenditure on behalf of, the Governor or the Governor's campaign committee at any time after the vacancy occurs; or (b) any person who has made a contribution to, or expenditure on behalf of, the Governor or the Governor's campaign committee within the 30 days preceding the vacancy, unless such person requests and is granted a refund of such contribution or reimbursement of such expenditure.

## Section 10.  Fair and Equal Access

Employees are required to afford all constituents fair and equal opportunity to express their concerns and ideas regarding State programs and policies without regard to their political affiliation, sophistication, or affluence. Recommendations and decisions made by employees in the performance of their duties shall be made without bias.

## Section 11.  Dual Employment/Board Service

a.  No employee shall serve for compensation as a corporate officer or director of any for-profit or publicly held company. Voluntary, pro bono services on behalf of non-profit organizations may be permitted, so long as services to such organizations would not have the potential to create a conflict and do not impair the employee's ability to discharge his or her public duties fully, faithfully, and impartially.

b.  No officer may have any ongoing dual employment.

## Section 12.  Political Activities

a.  Employees wishing to take part in political activities are responsible for complying with applicable federal and state law.

b.  Employees are prohibited from soliciting or knowingly accepting any campaign contribution in a governmental building or office. "Accept" means to receive a contribution by personal hand-delivery from a contributor or his agent. This does not

5

apply when a government-owned building or any portion thereof is rented for the specific purposes of holding a campaign fundraiser.

c. Employees are permitted to express their opinions on political subjects and candidates and to take an active part in political campaigns outside of working hours, including the wearing of badges or buttons and displaying of bumper stickers and posters. Employees are encouraged to vote.

d. Employees who wish to seek office must comply with applicable federal and state laws. Employees must notify the designated Ethics Officer prior to announcing or qualifying for any elected position or office.

### Section 13. Personal Use of Telephone and Internet Access

a. Personal long-distance calls shall not be charged to State telephones. Employees must use their personal long-distance credit card or other personal resource for this purpose. It is also inappropriate to use a State cellular telephone for personal calls.

b. State-provided internet access is intended for public business. Employee use of the internet may be recorded and monitored. No employee is permitted to use or access the internet for pornographic, obscene, or other improper purposes.

### Section 14. Miscellaneous

There may be unique or compelling circumstances warranting exceptions to or waivers from these policies in certain individual cases. In those instances, prior written approval of the designated Ethics Officer is required.

### Section 15. Sanctions

Each agency head shall make a copy of this Order available to all employees and shall institute procedures for its enforcement consistent with all applicable Georgia laws. Employees who violate this Order are subject to disciplinary action, including termination of employment, subject to review by the Executive Counsel. The agency head of each agency shall be responsible to the Office of the Governor for the faithful enforcement of this Order, and shall report all alleged violations to the Inspector General.

ORDERED:   This __ day of January, 2003.

_Sonny Perdue_
Governor

6

GEORGIA DEPARTMENT OF LABOR
APPEALS TRIBUNAL - SUITE 201, 1630 PHOENIX BLVD.
COLLEGE PARK, GEORGIA  30349-5506

DECISION OF ADMINISTRATIVE HEARING OFFICER - DOCKET   2044A 2006 -
SSN   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

FSO     4900                        APPEAL FILED   01/20/2006
APPELLANT     EMPLOYER               APPEAL HEARD   02/21/2006
                                     RELEASE DATE   03/06/2006

EMPLOYER:                           MAIL TO:

ALTAMAHA TECHNICAL COLLEG            MARTHA DEKLE
HUMAN RESOURCES SPECIALIST           1606 UNION STREER
1777 WEST CHERRY STREET              POST OFFICE BOX 1644
JESUP, GEORGIA 31545                 BRUNSWICK GA 31521

                                    CLAIMANT:

                                    DOUGLAS E. ROOKS
                                    410 SIMPSON DRIVE
                                    BAXLEY, GEORGIA 31513


                                     MARTHA DEKLE
                                    1606 UNION STREER
                                    POST OFFICE BOX 1644
                                    BRUNSWICK GA 31521

APPEARANCES:  An in person hearing was conducted in the Brunswick
Career Center in Brunswick, Georgia. The claimant appeared with his
legal representative, Martha Dekle, Esq. Appearing on behalf of the
employer, Monica O'Quinn, Vice President Administrative Services and
Janet Carter, Human Resources Specialist.


O.C.G.A. PROVISIONS AND ISSUES INVOLVED:

OCGA Section 34-8-195(a)(3)(A)(i) - Whether the claimant is on a
leave of absence at his/her own request.


FINDINGS OF FACT: The claimant has been employed since March 4, 2002.
The claimant was on approved FMLA leave from July 25, 2005 to Novem-
ber 8, 2005. The claimant was cleared to return to work on November
29, 2005 by the employer's physician. The employer did not allow the
claimant to return to work, but placed the claimant on suspension.
The claimant was advised on December 14, 2005 that he was placed on
suspension.

Timely separation information was received from the employer.


REASONS FOR DECISION:  OCGA Section 34-8-195(a)(3)(A)(i) provides
that an individual shall not be entitled to unemployment insurance

EXHIBIT "J"

DOUGLAS E. ROOKS                    DOCKET: 2044A 2006
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                         Page 3


If you desire to appeal this decision, notify the office indicated
below in writing.  Appeal rights expire 15 days after decision is
issued.  An appeal filed by mail shall be considered filed on the date
of the postmark cancellation shown on the envelope, or the actual date
of receipt by the department in the absence of a legible postmark.  A
postage meter date will not be used to determine the date filed.  An
appeal filed by fax may be submitted to the fax number shown below and
would be considered filed on the date received.

MFM

GEORGIA DEPARTMENT OF LABOR
BOARD OF REVIEW
SUSSEX PLACE - SUITE 801
148 ANDREW YOUNG INTERNATIONAL BOULEVARD, N.E.
ATLANTA, GEORGIA  30303

FAX:  404-232-3339

This is to certify that this decision was mailed on the above
RELEASE DATE BY _TR/MH_. THE POSTMARK DATE IS THE RELEASE DATE.

                                    DOL-473A (2/95)

VIDALIA GA 30474
(912) 538-3231

DOUGLAS ROOKS
410 SIMPSON DRIVE          SSN   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
BAXLEY GA 31513

### NOTICE TO CLAIMANT

Attached is a copy of information received regarding your claim.
Additional information is needed from you to determine your
eligibility for unemployment benefits.

Please call ANGELA B PAINE, at the career center shown
above no later than 03 21 06 with your response to the
following information:

YOUR UNEMPLOYMENT CLAIM HAS BEEN REMANDED BACK TO THE LOCAL OFFICE
FOR PDH TO BE HELD @ 10.30 3-21-06 AT THE VIDALIA GDOL ON THE
REASON FOR SUSPENSION FROM ALTAMAHA TECH. IF YOU CAN NOT BE HERE ON
THAT DATE AND TIME CALL ANGELA PAINE @912-538-3231 10.00

**Failure to respond to this request by 03 21 06, will require
the department to make a determination based on available
information.  This could result in a loss of benefits and a
possible overpayment.**

ANGELA B PAINE, EMR                          Mailed   03 16 06
                                             DOL-459G (09/04)
        An Equal Opportunity Employer
                                             UC2211

**ANGELA PAINE**
Employment Marketing Representative



**MICHAEL L. THURMOND**
**COMMISSIONER**

**GEORGIA DEPARTMENT OF LABOR**
Vidalia Career Center
16 Carter Center, Queen Street
P.O. Box 1106
Vidalia, Georgia 30475

TEL      (912)   538-3231
FAX      (912)   538-3238
E-MAIL   angela.paine@dol.state.ga.us

## GEORGIA DEPARTMENT OF LABOR
### CLAIMS EXAMINER'S DETERMINATION

SSN _____ ***-**-0370

BYB _____ 12/16/05

CWB _____ 12/11/05

CAREER CENTER
4900                                                                7000
VIDALIA
#16 CARTER CNTR/QUEEN ST.
P.O. BOX 1106
VIDALIA, GEORGIA 30474
FAX # (912) 538-3238

| CLAIMANT | EMPLOYER |
|---|---|
| DOUGLAS E ROOKS<br>410 SIMPSON DRIVE<br>BAXLEY GA          31513 | ALTAMAHA TECHNICAL COLLEGE<br>ATTN: JANET CARTER<br>HUMAN RESOURCES SPECIALIST<br>1777 WEST CHERRY STREET<br>JESUP   GA   31545 |

### SECTION I: CLAIM DETERMINATION
Benefits are allowed as of 12/11/05.

### SECTION II: LEGAL BASIS FOR DETERMINATION
Section 34-8-195 (a) (3) (A) (i), (ii), and (iii) and Section 34-8-195 (a) (3) (B) of the Employment Security Law say you cannot be paid benefits while you are on vacation or leave which you requested. You cannot be paid if you are on vacation established by your work contract or union agreement. This includes vacations set by custom or practice and vacations with 30 day prior announcement. You may not be denied benefits for more than two weeks of unpaid employer set vacation in a calendar year.

### SECTION III: REASONING
You were unable to perform your job as expected due to complaint you wrote regrading harassment. As a result your employer placed you on leave beginning 11/28/05. You did not request the leave. Therefore, you can be paid unemployment benefits as long as you are away from work for this reason and meeting all other requirements of law. If this condition changes, you must notify the Department.

### SECTION IV: ALLOWANCE/DISALLOWANCE
NOTICE TO EMPLOYER.

Appt. 1

### SECTION V: APPEAL RIGHTS
NOTE This determination will become final unless you file an appeal on or before 01/20/06. If you file an appeal you must continue to report on your claim as instructed, or you will not be paid if you win your appeal. Refer to the Claimant Handbook booklet or contact an office of the Georgia Department of Labor for more details.

Georgia Department of Labor                    12/30/05                    01/05/06

STATE OF GEORGIA

COUNTY OF GLYNN

## VERIFICATION

Comes now Douglas E. Rooks, who deposes and says that the facts contained in the

foregoing Complaint for Damages against Altamaha Technical College are true and correct to the

best of his knowledge and belief.

_Douglas E. Rooks_
DOUGLAS E. ROOKS

Sworn to and subscribed
before me this _24th_
day of March 2006.

_____
NOTARY PUBLIC
My Commission Expires:

MELISSA P. ODOM
Notary Public
State of Georgia
My Commission Exp 9-1-08