United States District Court
for the Southern District of Georgia
Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2007 AUG 13 A 11: 13
CLERK

| | | |
|---|---|---|
| DOUGLAS E. ROOKS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| ALTAMAHA TECHNICAL COLLEGE, | : | |
| Defendant. | : | NO. CV206-72 |

### O R D E R

Plaintiff, Douglas E. Rooks, filed this action against Defendant, Altamaha Technical College ("ATC"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and 42 U.S.C. §§ 1981a, 1983, 1985, and 1988. Before the Court is Defendant's motion for summary judgment. For the following reasons, Defendant's motion will be **GRANTED IN PART and DENIED IN PART**.

**FACTS**

Plaintiff, an African-American male, was employed at ATC as a commercial truck driving instructor at the Baxley, Georgia, campus, beginning on July 2, 2001.

On July 27, 2005, Plaintiff told his supervisor that when he (Rooks) was not teaching defensive driving at ATC, he taught defensive driving at the training center (unnamed) which his wife owned in Baxley, Georgia.

On July 28, 2005, Plaintiff took leave under the Family and Medical Leave Act (the "Act"). While out on leave, Plaintiff taught defensive driving courses for his wife's training center in Baxley, Georgia.

On September 8, 2005, Plaintiff submitted to ATC a written complaint alleging numerous problems at the ATC Baxley campus. These problems included alleged retaliation, intimidation, and racial discrimination. Plaintiff further alleged that he believed his computer content was shared with others, that he was required to complete the on-line ethics training test for his supervisor and two other instructors, that he had been required to work the majority of the nights and weekends in the past, and that he was falsely accused of unprofessional conduct.

2

In response to Plaintiff's complaint, ATC interviewed all of the instructors in the truck driving program concerning the allegations contained in Plaintiff's memorandum. Following the investigation, Plaintiff's supervisor was suspended for thirty days for having someone else complete her ethics training test.

On November 3, 2005, Plaintiff's physician released him to return to work, effective November 8, 2005. (Compl. ¶ 15.) ATC advised Plaintiff that he would not be permitted to return to work until he was evaluated by ATC's physician and completed a physical examination by the Georgia Department of Transportation.

On December 14, 2005, Plaintiff was advised that he was suspended without pay for thirty days, effective as of November 28, 2005, for teaching defensive driving courses for his wife's training center.

While on leave, Plaintiff's employment contract with ATC was not renewed. Plaintiff was subsequently presented with a new employment contract containing conditions not in his previous contracts, including a noncompete agreement and the requirement that he submit to random drug testing, thereby preventing Plaintiff from taking prescribed medication.

AO 72A
(Rev. 8/82)

On December 29, 2005, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). In the charge, Plaintiff alleged retaliation and discrimination based on his race and disability. Specifically, Plaintiff alleged that he was: paid lower wages than similarly situated white instructors; not permitted to return to work after being released by his attending physician until he was evaluated by an employer designated physician and completed a physical examination administered by the Department of Transportation; placed on thirty day suspension without pay as a result of the investigation regarding his memorandum; subjected to random drug tests; and prohibited from taking medication necessary to treat his disability. Plaintiff further alleged that he was discriminated against because of his race and disability, and retaliated against for complaining about what he believed to be discriminatory practices at ATC.

Plaintiff timely filed the instant action on March 24, 2006. In his complaint, Plaintiff alleges that ATC discriminated against him in retaliation for making the written complaint to ATC by not permitting him to return to work and retroactively suspending him without pay, thereby depriving him of the ability to avail himself of administrative remedies, in

AO 72A
(Rev. 8/82)

deliberate and intentional violation of the Constitution and laws of the United States and the state of Georgia.

On April 9, 2007, Defendant filed the instant motion for summary judgment. Defendant argues that it is not an entity subject to suit. Defendant further argues that it is entitled to Eleventh Amendment immunity from suit on Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985, 1988, and the ADA. Finally, Defendant argues that it is entitled to summary judgment on Plaintiff's Title VII claims on the merits.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must construe all facts and reasonable inferences in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts

AO 72A
(Rev. 8/82)

showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on "an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## II. Eleventh Amendment Immunity[1]

"The Eleventh Amendment is 'a recognition that states, though part of a union, retain attributes of sovereignty,

---

[1] Defendant's argument that ATC is not a legal entity capable of being sued is without merit. See Perdue v. Athens Tech. Coll., 283 Ga. App. 404, 641 S.E.2d 631 (Ga. App. 2007); Reynolds v. Flint River Tech. Inst., 223 Ga. App. 240, 477 S.E.2d 393 (Ga. App. 1996); Durrani v. Valdosta Tech. Inst., 810 F. Supp. 301, 305 (M.D. Ga. 1992).

6

including immunity from being compelled to appear in the courts of another sovereign against their will.'" Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), cert. denied, 540 U.S. 1107, 124 S.Ct. 1061, 157 L.Ed.2d 892 (2004) (quoting McClendon v. Ga. Dep't of Cmty. Health, 261 F.3d 1252, 1256 (11th Cir. 2001)). Thus, under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens in federal court. Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301 (11th Cir. 2007) (citing Hans v. La., 134 U.S. 1, 20-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890))[2]. Even in those situations in which the Eleventh Amendment bars suit, however, a party may sue the state if the state has waived its immunity, Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985), or if Congress has validly abrogated the state's immunity, Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000).

In order for a state to waive its immunity, it must do so expressly. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974); Maynard v. Bd. of Regents, 342

---

[2] Plaintiff's reliance on Monell v. New York City Dep't Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny is misplaced, as those cases address local government, not state, immunity.

F.3d 1281, 1287 (11th Cir. 2003). Such consent is evidenced only by an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." Atascadero State Hosp., 473 U.S. at 238, 105 S. Ct. at 3145 n.1; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S. Ct. 900, 907, 79 L.Ed.2d 67 (1984). The State of Georgia has not waived its Eleventh Amendment immunity. In fact, it has stated exactly the opposite. See O.C.G.A. § 50-21-23(b).

Congress can abrogate a states' Eleventh Amendment immunity where (1) Congress unequivocally expressed its intent to abrogate the states' sovereign immunity in the statute at issue, and (2) Congress acted pursuant to a valid grant of constitutional authority. Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ., 405 F.3d 954, 956-57 (11th Cir.), reh'g & reh'g en banc denied, 159 Fed. Appx. 182 (2005) (citations omitted). As Courts in this Circuit have recognized, Congress has not abrogated the State of Georgia's Eleventh Amendment immunity as to § 1981(a), § 1983, § 1985, § 1988 and ADA claims. See Alyshah v. Ga., 2006 WL 2578918 (N.D. Ga. 2006), aff'd, 2007 WL 1072931 (11th Cir. April 11, 2007) (42 U.S.C. §§ 1981, 1983, 1986, and 1988 claims); Clifton v. Ga. Merit

AO 72A
(Rev. 8/82)

Sys., 478 F. Supp.2d 1356, 1368 (N.D. Ga. 2007) (state employment discrimination actions under Title II of the ADA); Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301-02 (11th Cir. 2007) (citing Miller v. King, 384 F.3d 1248, 1259-60 (11th Cir. 2004)) (§ 1983 claims); Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 967-68, 148 L.Ed.2d 866 (2001) (Title I of the ADA for money damages); Gary v. Ga. Dep't of Human Res., 323 F. Supp.2d 1368, 1372 (M.D. Ga. 2004) (Title I of ADA); Williamson v. Ga. Dep't of Human Res., 150 F. Supp.2d 1375, 1379-82 (S.D. Ga. 2001) (Title II of ADA); Fedorov v. Bd. of Regents for Univ. of Ga., 194 F. Supp.2d 1378, 1386 (S.D. Ga. 2002) (ADA & § 1983 claims). Thus, the Court lacks subject matter jurisdiction over these claims.

### III. Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff

alleges three theories of intentional discrimination because of his race: disparate treatment, retaliation and hostile work environment.

In showing that the employer discriminated against him, a plaintiff may rely on direct or circumstantial evidence of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 526, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993) ("Because Title VII tolerates no racial discrimination, subtle or otherwise, we devised a framework that would allow both plaintiffs and the courts to deal effectively with employment discrimination revealed only through circumstantial evidence."); see also Apodaca v. Sec'y of Dep't of Homeland Sec., 161 Fed. Appx. 897, 899 (11th Cir. 2006) (citations omitted). Direct evidence is "evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir.), reh'g & reh'g en banc denied, 130 F.3d 446 (1997) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)). If the plaintiff offers direct evidence and the trier of fact accepts that evidence, then the plaintiff has proven discrimination. McCarthney v. Griffin-Spalding County Bd. of Educ., 791 F.2d 1549, 1553 (11th Cir. 1986)

10

(quoting Bell v. Birmingham Linen Serv., 715 F.2d 1552, 1557 (11th Cir. 1983)). Here, Plaintiff offers insufficient direct evidence of discrimination to support his claims and, therefore, must rely on circumstantial evidence.

When the plaintiff relies upon circumstantial evidence to establish his claim, the district court examines the claim using the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. V. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006); Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under this framework, a plaintiff must first establish a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. Underwood v. Perry County Com'n, 452 F.3d 1258, 1259 (11th Cir. 2006); McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. Brooks, 446 F.3d at 1162. Once the employer meets its burden of production by proffering a legitimate, non-discriminatory reason, thereby rebutting the presumption of discrimination,

the "inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. (quoting EEOC v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002)).

A.  Disparate Treatment

Plaintiff alleges that he was subjected to "disparate treatment toward students and instructors" and "pay disparity between black and white employees." To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). There is no dispute that Plaintiff meets the first and second elements of his prima facie case.

Pretermitting any determination with regard to the fourth element, Plaintiff has failed to present any evidence to establish the third element — that similarly situated employees

12

outside of his protected class were treated more favorably than he was treated. Upon review of the record, the Court finds that Plaintiff has offered no evidence even arguably tending to show that he was subjected to disparate treatment because of his race. Plaintiff's conclusory allegations, absent any specific facts, are insufficient to establish a genuine issue for trial with regard to Plaintiff's disparate treatment claims. See Walker, 911 F.2d at 1576-77; see also Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir.), reh'g & reh'g en banc denied, 163 Fed. Appx. 852 (2005) (quoting Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931-32 (7th Cir. 1995)) ("[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original).

B. **Retaliation**

Plaintiff alleges that Defendant suspended him in retaliation for his making a written complaint containing allegations of racial discrimination and did not renew his employment contract in retaliation for his filing of a charge

13

with the EEOC. Plaintiff also alleges that he was harassed in retaliation for engaging in these protected activities. To establish a prima facie showing of retaliation under Title VII, Plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. Cooper v. S. Co., 390 F.3d 695, 740 (11th Cir. 2004), reh'g & reh'g en banc denied, 143 Fed. Appx. 310, cert. denied, 126 S.Ct. 478, 163 L.Ed.2d 363 (2005) (quoting Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994)). Plaintiff has met his initial burden of establishing a prima facie claim of retaliation.

Title 42, U.S.C. § 2000e-3(a) makes it unlawful for an employer to retaliate against an employee for filing an EEOC charge. See Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412-13 (11th Cir. 1998). "Title VII protects not just individuals who have filed formal [EEOC] complaints, but also those who informally voice complaints to their superiors." Wilson v. Farley, 203 Fed. Appx. 239, 247 (11th Cir. 2006), cert. denied, 127 S. Ct. 2055, 167 L.Ed.2d 785 (2007) (quoting Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 n.2 (11th Cir. 2002)). Thus, Plaintiff's September 8, 2005,

AO 72A
(Rev. 8/82)

written complaint to his employer and his formal EEOC complaint are protected activities under Title VII.

To demonstrate participation in a protected activity for purposes of a prima facie case, however, a plaintiff must further demonstrate both his subjective good faith belief that the employer was engaged in unlawful employment practices and that his belief was objectively reasonable. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002). Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has satisfied his burden as to the first element of his prima facie case for retaliation.

Plaintiff has also satisfied his burden as to the second element of his prima facie case. An adverse employment action is conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1233 (11th Cir. 2006) (quoting Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)). Plaintiff's suspension and non-renewal of his employment contract clearly constitute adverse employment actions. Further, a reasonable jury could find that the

AO 72A
(Rev. 8/82)

alleged harassment and humiliation constituted an adverse employment action. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (harassing conduct may be sufficiently severe or pervasive to alter the terms or conditions of his employment).

Plaintiff has also established a sufficient relation between his protected activities and the adverse employment actions as necessary to satisfy the third element of his prima facie case. To satisfy the causal connection requirement, a plaintiff must establish that the protected activity and the alleged retaliatory action are not completely unrelated. Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 859 (11th Cir.), reh'g & reh'g en banc denied, 219 Fed. Appx. 975 (2006) (citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998)). The usual way of showing a causal connection is through evidence of a temporal relationship. Bethel v. Porterfield, 293 F. Supp.2d 1307, 1330 (S.D. Ga. 2003), aff'd, 116 Fed. Appx. 246 (11th Cir. 2004) (citing Maniccia v. Brown, 171 F.3d 1364, 1369-70 (11th Cir. 1999)).

Plaintiff has offered sufficient temporal proximity to survive summary judgment. Plaintiff filed his informal complaint on September 8, 2005, and his EEOC charge on December

16

29, 2005. The alleged harassment began in November 2005 and Plaintiff was notified of his suspension on December 14, 2005. These events are not wholly unrelated and, thus, under the McDonell Douglas framework, Plaintiff has established a prima facie case for retaliation.

Therefore, the burden shifts to Defendant to demonstrate a non-discriminatory reason for its actions. Defendant does not address Plaintiff's contention that Defendant retaliated against him by subjecting him to harassment and failing to renew his employment contract. Defendant does, however, offer the race neutral explanation for Plaintiff's suspension that Plaintiff was suspended because he taught defensive driving classes at his wife's school while on FMLA leave. Plaintiff, however, has arguably demonstrated that Defendant's proffered reason was pretextual. Specifically, Plaintiff has offered evidence indicating that he was never notified that teaching classes at his wife's school was prohibited and that, in the past, his supervisor had permitted him to teach classes during his time off. Thus, Plaintiff has established that genuine issues exist for trial with regard to his retaliation claims.

AO 72A
(Rev. 8/82)

## C. Hostile Work Environment

Plaintiff alleges that he was subjected to continual harassment and humiliation, thereby creating a hostile work environment. A hostile work environment claim under Title VII requires evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L.Ed.2d 201 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993)); Miller, 277 F.3d at 1275; Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1008 n.17 (11th Cir. 1997), reh'g & reh'g en banc denied, 167 F.3d 542 (1998).

In objectively determining whether alleged harassment creates a hostile environment, factors to consider include: (1) frequency of the discriminatory conduct; (2) severity of the discriminatory conduct; (3) whether the conduct is threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's performance at work. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1247-48 (11th Cir. 2004);

AO 72A
(Rev. 8/82)

Miller, 277 F.3d at 1276. Furthermore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Apodaca, 161 Fed. Appx. at 901 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998)).

Applying these factors to the facts of the instant case, the Court finds that, viewed in isolation, the alleged incidents fail to establish, from an objective standpoint, that the alleged harassment was so frequent, severe, or pervasive to constitute actionable racial harassment under Title VII. Generally speaking, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1285 n.12 (11th Cir. 2003), cert. denied, 541 U.S. 959, 124 S.Ct. 1714, 158 L.Ed.2d 399 (2004) (quoting Faragher, 524 U.S. at 788, 118 S.Ct. at 2283) (internal quotations omitted). Therefore, a court must look at the totality of the circumstances when determining "whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working

environment." Id. Viewing the totality of the circumstances with regard to the alleged harassing conduct in the light most favorable to Plaintiff, the Court concludes that he has arguably established a hostile work environment claim.

**CONCLUSION**

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, ATC's Motion for Summary Judgment (Doc. No. 27) is **GRANTED IN PART and DENIED IN PART**.

Defendant's motion for summary judgment on Plaintiff's ADA, Title VII disparate treatment, and §§ 1981(a), 1983, 1985, and 1988 claims is **GRANTED**. Defendant's motion for summary judgment on Plaintiff's Title VII retaliation and hostile work environment claims is **DENIED**.

**SO ORDERED**, this _13_ day of August, 2007.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA